## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **TRAVIS L. BAKER,** | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No. 2:21cv00037 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| **KILOLO KIJAKAZI,** | ) | |
| **Acting Commissioner of** | ) | By: Pamela Meade Sargent |
| **Social Security,** | ) | United States Magistrate Judge |
| Defendant | ) | |

### I. Background and Standard of Review

Plaintiff, Travis L. Baker, ("Baker"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that he was not eligible for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C. § 1381 *et seq*. Jurisdiction of this court is pursuant to 42 U.S.C. § 1383(c)(3). This case is before the undersigned magistrate judge by transfer by consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Neither party has requested oral argument; therefore, this case is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there

is "substantial evidence.'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Baker protectively filed his application for SSI[1] on August 15, 2018, alleging disability as of July 1, 2017, based on back, right leg and left ankle pain, depression, anxiety and panic attacks. (Record, ("R."), at 15, 321-26, 363, 410.) The claim was denied initially and on reconsideration. (R. at 200-23.) Baker requested a hearing before an administrative law judge, ("ALJ"). (R. at 224-25.) A hearing was held on June 10, 2020, at which Baker was represented by counsel. (R. at 65-97.)

---

[1] On April 29, 2011, Baker protectively filed an application for disability insurance benefits, ("DIB"), alleging disability as of April 21, 2011. (R. at 101.) By decision dated July 10, 2013, the ALJ denied Baker's claim. (R. at 101.) Baker pursued his administrative appeals, but the Appeals Council denied his request for review. (R. at 101.) On July 22, 2013, and July 31, 2014, Baker filed subsequent applications for DIB and SSI alleging disability beginning July 11, 2013. (R. at 101.) By decision dated July 6, 2017, the ALJ denied Baker's claims. (R. at 101-23.)

Pursuant to the Fourth Circuit's opinion in *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473 (4th Cir. 1999), and in accordance with Social Security Acquiescence Ruling, ("AR"), 00-1(4), "[w]hen adjudicating a subsequent disability claim arising under the same...title of the Act as the prior claim, an adjudicator determining whether a claimant is disabled during a previously unadjudicated period must consider such a prior finding as evidence" and consider its persuasiveness in light of all relevant facts and circumstances. A.R. 00-1(4), 65 Fed. Reg. 1936-01, at *1938, 2000 WL 17162 (Jan. 12, 2000). It is noted that, when *Albright* was decided, the agency "weighed" opinion evidence under different standards. *See* 56 Fed. Reg. 36932-01, at *36960, 1991 WL 142361 (Aug. 1, 1991). Those standards have been superseded by 20 C.F.R. § 416.920c, which prescribes how to consider persuasiveness of opinion evidence and prior administrative findings in claims made on or after March 27, 2017. Because this claim was made after March 27, 2017, the ALJ is required to consider prior ALJ decisions and Appeals Council findings under *Albright*. *See* Program Operations Manual System, ("POMS"), DI 24503.005, available at https://policy.ssa.gov/poms.nsf/lnx/0424503005 (effective Apr. 13, 2021) (explaining the categories of evidence).

After reviewing the previous 2017 decision, the ALJ in this case noted he gave the decision some weight. (R. at 28.) The ALJ noted that the 2017 decision limited Baker to light work with postural and environmental limitations. (R. at 28.) The ALJ found that Baker had additional physical limitations that limited him to sedentary work. (R. at 28.) In addition, the ALJ found the record supported severe mental impairments. (R. at 28.)

By decision dated July 9, 2020, the ALJ denied Baker's claim. (R. at 174-85.) After the ALJ issued his decision, Baker pursued his administrative appeals. (R. at 475-76.) By order dated November 24, 2020, the Appeals Council remanded Baker's claim to the ALJ for further proceedings. (R. at 193-95.) Upon remand, the Appeals Council instructed the ALJ to evaluate and indicate the persuasiveness of the prior ALJ's decision; to further consider the treating source and consultative examiner opinions; and to evaluate Baker's mental impairments. (R. at 194.)

By decision dated May 10, 2021, the ALJ denied Baker's claim. (R. at 15-32.) The ALJ found Baker had not engaged in substantial gainful activity since August 15, 2018, the application date. (R. at 17.) The ALJ determined Baker had severe impairments, namely, lumbar degenerative disc disease with stenosis; moderate obesity; arthritis of the right ankle, status-post ankle surgery; major depressive disorder; anxiety disorder; and borderline intellectual functioning, but he found Baker did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 17-18.)

The ALJ found Baker had the residual functional capacity to perform sedentary[2] work, except he could not operate foot controls, crawl or climb ladders, ropes or scaffolds; he could occasionally stoop, crouch and kneel; he could frequently, but not constantly, handle and finger, bilaterally; he could adequately

---

[2] Sedentary work involves lifting items weighing up to 10 pounds with occasional lifting or carrying of articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally, and other sedentary criteria are met. *See* 20 C.F.R. § 416.967(a) (2021).

understand, remember and apply information, as well as he concentrate, persist and maintain pace for simple, routine, noncomplex tasks; he could follow work instructions at that level in a work setting involving routine work situations and work changes; he required an ordinary level of supervision, but could have no more than occasional interaction with supervisors and co-workers; he could have no public interaction; and he could not perform fast-paced production or pace rate work demands, such as assembly line work. (R. at 20-21.) The ALJ found Baker was unable to perform any past relevant work. (R. at 30.) Based on Baker's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found a significant number of jobs existed in the national economy that Baker could perform, including the jobs of an assembler and an addressing clerk. (R. at 30-32, 57-60.) Thus, the ALJ concluded Baker was not under a disability as defined by the Act and was not eligible for SSI benefits. (R. at 32.) *See* 20 C.F.R. § 416.920(g) (2021).

After the ALJ issued his decision, Baker pursued his administrative appeals, (R. at 494-96), but the Appeals Council denied his request for review. (R. at 1-5.) Baker then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2021). This case is before this court on Baker's motion for summary judgment filed May 5, 2022, and the Commissioner's motion for summary judgment filed May 25, 2022.

## II. Facts

Baker was born in 1975, (R. at 30, 321), which classifies him as a "younger person" under 20 C.F.R. § 416.963(c). He has a high school education and past relevant work as a foreman and an auto parts salesman. (R. at 30-31, 46, 364.) Baker

testified that his medications caused drowsiness and made it difficult for him to think clearly and make decisions. (R. at 48.) He stated he attempted to return to work but became physically ill due to anxiety from being around people. (R. at 50.) Baker stated he was terminated due to slow work performance, problems being off task, having to leave his work area and multiple absences. (R. at 51, 56-57.) He stated that he experienced pain and swelling in his left ankle, which was relieved by elevating his left lower extremity. (R. at 52.)

In rendering his decision, the ALJ reviewed records from Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Jack Hutcheson, M.D., a state agency physician; Leslie E. Montgomery, Ph.D., a state agency psychologist; Dr. Robert McGuffin, M.D., a state agency physician; Simpson Clinic, LLC, ("Simpson Clinic"); Scott County Behavioral Health Services; Frontier Health; Mountain Region Family Medicine, ("Mountain Region"); Wellmont Medical Associates; Imperial Pain Specialist KPT, ("Imperial Pain"); Arthur W. Stair, III, M.A., a licensed senior psychological examiner; and Blue Ridge Neuroscience Center.

By way of background, Baker injured his back in a workplace accident in July 2010. (R. at 678-83.) The diagnostic images taken of his spine generally were unremarkable, with his thoracic spine revealing scoliosis with slight spondylosis and no fracture or dislocation, and his lumbar spine reflecting only mild degenerative changes and slight spondylosis at the L2-L3 level. (R. at 680-81.) Baker was diagnosed with an acute lumbosacral strain and released back to work on restricted duty in August 2010. (R. at 672.) In 2010, Baker was admitted to The Laurels for detox after abusing Lortab and Xanax, but he failed to follow through with treatment. (R. at 691.) In 2013, Baker suffered a work-related back injury. (R. at 776.) He was off work two to three days and was laid off after performing light duty work for three

months. (R. at 776.) On November 3, 2013, after complaining of back pain, a CT scan of Baker's abdomen and pelvis were unremarkable. (R. at 507.) On September 25, 2014, an MRI of Baker's lumbar spine showed a small right paracentral disc protrusion at the L5-S1 level with mild to moderate right lateral recess stenosis. (R. at 615.) On July 13, 2016, a myelogram and CT scan of Baker's lumbar spine showed minimal degenerative changes superimposed on congenital narrowing of the lumbar canal, resulting in overall mild diffuse spinal stenosis and mild foraminal narrowing, as well as a mild disc bulge at the L5-S1 level with no significant effacement of the nerve roots. (R. at 1306-09.)

On January 11, 2017, Baker saw Dr. Jason T. Hayes, D.O., a physician with Scott County Behavioral Health Services, for a psychiatric evaluation.[3] (R. at 687-89.) Baker denied any history of alcohol or substance abuse.[4] (R. at 687.) Baker's dress, grooming and hygiene were appropriate; he was calm and cooperative with good eye contact; his cognition was grossly intact; his mood was "pretty good;" his affect was blunted; his speech was normal; his thought process was coherent; he denied suicidal and homicidal ideations, audio and visual hallucinations and delusions; his insight was fair; and his judgment was good. (R. at 688.) Dr. Hayes diagnosed major depressive disorder, recurrent, moderate; and unspecified anxiety. (R. at 689.) Baker's examination findings remained unchanged at his February and

---

[3] From December 21, 2016, through March 3, 2017, Baker participated in individual therapy at Scott County Behavioral Health Services. (R. at 685-94.) During this time, Baker reported he was an "active caretaker" for his grandmother, and he mowed his mother's and grandmother's lawns and performed chores. (R. at 690-91.) Baker was fully oriented and cooperative; his thought process was logical; he exhibited no evidence of audio or visual hallucinations; and he denied suicidal and homicidal ideations. (R. at 690.)

[4] In April 2020, Baker discussed his issues with substance abuse during therapy at Frontier Health. (R. at 1614.)

March 2017 therapy sessions. (R. at 685-86.) In March 2017, Baker stated he would have to return to work if his disability claim was denied. (R. at 685.)

From May 2018 through May 2019,[5] Baker underwent pain management at Simpson Clinic for his complaints of chronic low back pain and left ankle pain.[6] (R. at 703-1007, 1109-20.) Dr. Harland Simpson, M.D., diagnosed chronic low back pain; lumbar degenerative disc disease; lumbar stenosis; lumbar facet osteoarthritis; disc protrusion at the L5 level; and left ankle osteoarthritis and pain. (R. at 777.) After establishing a treatment regimen, Baker reported that his medication kept his pain controlled and that he was able to exercise and do his activities of daily living more easily. (R. at 726, 733, 741, 748, 755, 762, 769, 812, 819, 921, 1114.) Examinations revealed Baker was fully oriented; his affect was appropriate; he could ambulate and sit easily; he had tenderness to palpation in the lumbar spine and right sacroiliac, ("SI"), joint; he had soft tissue swelling in the left ankle; his peripheral pulses were palpable; his bilateral lower extremities had no edema; and he had intact sensation in his bilateral upper and lower extremities. (R. at 726, 733, 741, 748, 755, 762, 769, 812, 819, 921, 1114.)

From March 2019 through February 2021, Baker participated in individual therapy at Frontier Health for major depressive disorder, recurrent episode, severe,

---

[5] During his office visits in June, July, August and September 2018, Baker reported his disability claim had been denied, and he was looking for a job. (R. at 748, 755, 762, 769.) On November 9, 2018, Baker reported he found a job as an assistant manager at Napa Auto Parts. (R. at 733.) On December 7, 2018, Baker reported increased pain after working on his feet up to nine hours a day. (R. at 726.) In January 2019, Baker reported he had quit his job because of the long hours. (R. at 812.) He stated the job was "too hard on him and his back," but later reported his pain was tolerable with medication. (R. at 812.)

[6] In May 2019, Baker's medications did not match what was in his pill bottle, resulting in his discharge from this pain management program. (R. at 1113.)

and generalized anxiety disorder. (R. at 1011-55, 1121-66, 1600-18, 1717-25.) Baker reported he did not experience any adverse effects from his medications and stated they were "working well" and controlled his symptoms. (R. at 1051, 1132, 1138, 1155, 1340-41.) During this time, Baker was alert and fully oriented; his speech was clear; he maintained good eye contact; his grooming and hygiene were excellent; he had no suicidal or homicidal ideations; he exhibited no auditory or visual hallucinations; his judgment and insight were fair; his mood ranged from euthymic to mildly dysthymic to depressed, with an appropriate, mildly anxious and slightly blunted affect; and he appeared stable. (R. at 1011, 1051, 1132, 1138, 1148, 1155, 1340-48, 1600, 1602, 1616, 1719-20, 1723-25.) In July 2019, Baker's case manager noted that Baker mowed lawns for income, and he had a notebook with "Baker's Lawn Care" written on the cover.[7] (R. at 1138, 1148.) In December 2019, Baker stated that, if his disability was denied, he would have to go back to work. (R. at 1343.) In July and September 2020, Baker reported increased depression and crying spells after learning that his disability claim had been denied. (R. at 1717, 1719.) In February 2021, Baker reported compulsive behavior consisting of washing his hands much more than normal. (R. at 1725.)

On March 19, 2019, Howard S. Leizer, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), finding Baker had mild limitations in his ability to understand, remember or apply information; to interact with others; to concentrate, persist or maintain pace; and to adapt or manage himself. (R. at 146-47.) He found Baker's depressive, bipolar and related disorders and anxiety and obsessive-compulsive disorders were nonsevere. (R. at 146.)

---

[7] Baker testified that this notebook was for a lawn care business from previous years and was probably six or eight years old. (R. at 70.)

On March 20, 2019, Dr. Jack Hutcheson, M.D., a state agency physician, found Baker could lift and carry items weighing up to 20 pounds occasionally and up to 10 pounds frequently; sit and stand and/or walk up to six hours each in an eight-hour workday; push/pull as much as the lift/carry restrictions; frequently climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and occasionally climb ladders, ropes and scaffolds. (R. at 148-50.) Dr. Hutcheson indicated no manipulative, visual, communicative or environmental limitations. (R. at 149-50.) On April 30, 2019, Dr. Robert McGuffin, M.D., a state agency physician, completed an assessment, which mirrored that of Dr. Hutcheson, except he found Baker could frequently balance and crawl; occasionally climb, stoop, kneel and crouch; and he should avoid concentrated exposure to vibration and hazards, such as machinery and heights. (R. at 164-66.)

On March 20, 2019, Baker established care with Leslie B. McNew-Hall, F.N.P., a family nurse practitioner with Mountain Region. (R. at 1082.) Baker's physical examination findings were normal; his judgment and insight were intact; his thought process was normal; his thought content was logical; and his mood was normal with an appropriate affect. (R. at 1083-84.) On April 8, 2019, Baker reported he had lost a total of 20 pounds over the past few months without attempting to do so. (R. at 1064.) His examination findings were normal. (R. at 1065-66.) Based on Baker's weight loss, McNew-Hall ordered CT scans of Baker's abdomen, pelvis and chest. (R. at 1066.) On April 11, 2019, a CT scan of Baker's chest revealed mild bilateral gynecomastia and no evidence of malignancy. (R. at 1061.) A CT scan of Baker's abdomen and pelvis was normal. (R. at 1333-34.)

On May 1, 2019, Baker underwent a psychiatric evaluation at Frontier Health for his complaints of increased depression and anxiety. (R. at 1124-27.) When asked

what he did to keep himself busy, Baker stated, "I guess, watch TV." (R. at 1124.) Baker appeared older than his stated age; his dress, grooming and hygiene were appropriate; he was calm and cooperative; he made good eye contact; his cognition was grossly intact; his mood was "pretty good" with a full affect; his speech was normal; his thought process was coherent; he denied suicidal and homicidal ideations; he exhibited no auditory or visual hallucinations or delusions; and his insight and judgment were fair. (R. at 1125.) Baker was advised to decrease oxycodone use because it could contribute to depression. (R. at 1125.) Dr. Hayes diagnosed major depressive disorder, recurrent, moderate; unspecified anxiety; and rule out opioid use disorder and malingering. (R. at 1125.) Baker's prescription for Cymbalta was increased. (R. at 1125.) At his follow-up appointment in October 2019, Baker reported his mood was "pretty good," and his examination findings remained unchanged. (R. at 1160, 1163.)

On April 30, 2019, Leslie E. Montgomery, Ph.D., a state agency psychologist, completed a PRTF, finding Baker had no limitations in his ability to understand, remember or apply information; to interact with others; and to adapt or manage himself. (R. at 162-63.) Montgomery found Baker had mild limitations in his ability to concentrate, persist or maintain pace. (R. at 163.) She found Baker's depressive, bipolar and related disorders; anxiety and obsessive-compulsive disorders; and borderline intellectual functioning were nonsevere. (R. at 162.) Montgomery noted Baker was diagnosed with borderline intellectual functioning in 2013, but the record did not suggest he had significant intellectual difficulties, as his activities of daily living were independent, and he had no history of special education. (R. at 163.) In addition, she noted Baker went out alone, drove, shopped in stores and handled his personal care. (R. at 163.) Montgomery opined Baker maintained the capacity to perform all types of work without significant limitations. (R. at 163.)

From June through November 2019, Baker saw Dr. Wesley V. Eastridge, M.D., a physician with Mountain Region, for complaints of neuropathy, urinary incontinence, depression, low back pain, anemia and weight loss. (R. at 1532, 1550, 1556, 1563.) Baker stated that his legs went numb while driving or sitting in a chair. (R. at 1532.) He stated that he walked for exercise and helped his grandmother with chores and taking her to doctor's visits. (R. at 1556.) Baker reported his depressive disorder was stable on medication. (R. at 1563.) During this time, Baker was in no apparent distress; he had no leg edema or varicosities; his lumbar spine exhibited no tenderness and had normal range of motion; he was able to walk on his toes and heels; his deep tendon reflexes were normal; he could squat and rise; he had normal judgment and insight; he was fully oriented; his recent memory was normal; and his mood and affect were normal.[8] (R. at 1533, 1550, 1557.) Dr. Eastridge recommended Baker move and change positions frequently, and he began tapering Baker off narcotics. (R. at 1533, 1550.) He suggested Baker visit the Regional Center for Advanced Manufacturing, ("RCAM"), for job training, and he encouraged him to find a hobby, to volunteer or to work. (R. at 1533, 1557.)  Dr. Eastridge referred Baker to physical therapy.[9] (R. at 1550.) Dr. Eastridge ordered aerobic workouts to strengthen Baker's back and recommended he start easy and gradually work up to "good sweaty workouts." (R. at 1550.)

On July 2, 2019, Baker was seen by Amanda R. Jackson, N.P., a nurse practitioner at Wellmont Medical Associates, for complaints of lower back pain and chronic numbness in his feet. (R. at 1327-28.) Baker was in no distress; he had

---

[8] In August 2019, Baker had limited range of motion in his back. (R. at 1557.) In June 2019, Baker could not feel the standard monofilament used for pedal sensation testing. (R. at 1533.)

[9] Baker reported physical therapy did not improve his pain. (R. at 1570-71.)

tenderness in his back; he was able to perform flat-lying leg lifts and knee bends without difficulty; he was alert; he had normal reflexes and coordination; and his mood, affect and behavior were normal. (R. at 1329-30.) Jackson diagnosed chronic back pain. (R. at 1330.)

Baker began pain management at Imperial Pain, where he treated from July 2017 through February 2021. (R. at 1358-1520, 1630-1709.) Although he continued to have subjective complaints of pain, Baker reported improvement with his treatment, including an increase in his daily activities and an improvement in his quality of life. (R. at 1358, 1364, 1372, 1381, 1390, 1398, 1406, 1414, 1422, 1430, 1438, 1444, 1453, 1630, 1636, 1642, 1648, 1655, 1662, 1668, 1672, 1676, 1682, 1686, 1690, 1696, 1703, 1707.) Examinations showed Baker had varicosities in the right lower leg; his judgment and insight were normal; he was fully oriented; his mood was appropriate; his speech was clear; he had loss of cervical lordosis; his motor examination was normal throughout the upper and lower extremities; he had pain with lateral bending, bilaterally; he was able to walk on his heels and toes; he had normal reflexes, motor functioning and sensation; his straight leg raising tests were negative; subluxation was found throughout the thoracic and lumbar spine and right hip; he had muscle tenderness and spasm in his thoracic and lumbar spine, but normal range of motion; he had limited range of motion of the hips, bilaterally; he had a normal gait; he had full weight-bearing on the left lower extremity; and his left ankle had no swelling and full range of motion. (R. at 1360-61, 1365-67, 1374-75, 1383-84, 1392-93, 1399-1401, 1407-09, 1415-17, 1423-25, 1432-33, 1440-41, 1445-47, 1631-33, 1637-39, 1643-45, 1649-51, 1656-58, 1663-65, 1669-71, 1677-79, 1683-85, 1691-93, 1697-99, 1704-06.) In July 2017, an MRI of Baker's lumbar spine showed degenerative disc disease; minor disc protrusion at the L5-S1 level

with minimal progression, but no obvious mass effect on the nerve roots; mild congenital spinal canal stenosis; and no significant facet disease. (R. at 1469-70.)

On November 13, 2019, Baker saw Dr. Eastridge and reported his depressive disorder was stable on medication. (R. at 1563.) Baker stated he visited the RCAM, but did not think he could "do it right now." (R. at 1563.) Baker was in no apparent distress; his deep tendon reflexes were normal; his judgment and insight were normal; he was fully oriented; and his recent memory, mood and affect were normal. (R. at 1564.) Dr. Eastridge ordered an MRI and x-rays of Baker's lumbar spine. (R. at 1564.) On November 22, 2019, x-rays of Baker's lumbar spine showed mild degenerative disease changes at the L2-L3 level, slight disc space narrowing at the L5-S1 level and no discrete evidence of instability. (R. at 1335.) That same day, an MRI of Baker's lumbar spine reflected mostly mild issues, but did note a potential slight abutment of his S1 nerve root without discrete displacement or compression at the L5-S1 level. (R. at 1337-39.) Dr. Eastridge referred Baker to Blue Ridge Neuroscience Center. (R. at 1565-66.)

On December 18, 2019, Dr. Jon W. Taveau, D.O., a neurosurgeon at Blue Ridge Neuroscience Center, saw Baker for his complaints of back and bilateral leg pain. (R. at 1570.) Baker stated prolonged walking, sitting and movements of the spine aggravated his pain. (R. at 1570.) Baker had tenderness of the mid lumbar region and bilateral SI joints, greater on the right; his straight leg raising tests were negative, bilaterally; he had pain with lateralization, but full range of motion; he was fully oriented; his attention and concentration were normal; he had full strength in his lower extremities, bilaterally; his sensation was intact; his gait was normal; he was able to stand without difficulty; and his mood was normal with an appropriate affect. (R. at 1572.) Dr. Taveau diagnosed low back pain, degeneration of a

- 13 -

lumbosacral intervertebral disc and SI joint dysfunction. (R. at 1573.) Dr. Taveau ordered a pain management consultation and noted there was no abnormality on the lumbar MRI to warrant consideration for lumbar surgery. (R. at 1573.)

On May 4, 2020, Baker saw McNew-Hall to have paperwork completed in support of his disability claim. (R. at 1590.) Baker reported back pain, depression and anxiety. (R. at 1590.) Baker was in no acute distress; his spine range of motion was painful, but normal; his paraspinal muscle strength and tone were normal; his right upper extremity and bilateral lower extremities had normal range of motion and normal stability; his right lower extremity had 4/5 strength, and his left lower extremity had 3/5 strength; his judgment and insight were intact; his thought process was normal; his thought content was logical; and his mood was normal with an appropriate affect. (R. at 1591-92.) McNew-Hall opined Baker was unable to work due to his back issues and depression. (R. at 1593.)

That same day, McNew-Hall completed a medical assessment, finding Baker could occasionally and frequently lift and carry items weighing five pounds; he could stand and/or walk up to four hours in an eight-hour workday and could do so for up to 30 minutes without interruption; he could sit up to three hours in an eight-hour workday and could do so for 30 minutes to one hour without interruption; he could never climb, stoop, kneel, or crouch; he could occasionally balance and crawl; and he was restricted from working around heights. (R. at 1594-96.) She found Baker would be absent from work more than two days a month. (R. at 1596.)

McNew-Hall also completed a mental assessment, finding Baker had no limitations in his ability to follow work rules; to use judgment in public; to interact with supervisors; and to understand, remember and carry out simple, detailed and

complex job instructions. (R. at 1597-99.) She found Baker had slight limitations in his ability to relate to co-workers and to maintain personal appearance. (R. at 1597-98.)  McNew-Hall found Baker had a satisfactory ability to function independently; to maintain attention and concentration; to behave in an emotionally stable manner; and to demonstrate reliability. (R. at 1597-98.) She found Baker had serious limitations, resulting in unsatisfactory work performance, in his ability to deal with the public; to deal with work stresses; and to relate predictably in social situations. (R. at 1597-98.) She found Baker would be absent from work more than two days a month. (R. at 1599.)

On May 27, 2020, Arthur W. Stair, III, M.A., a licensed senior psychological examiner, evaluated Baker at the request of his attorney. (R. at 1620-26.) Baker had good hygiene and grooming; his balance, gait and posture were within normal limits; he was fully oriented; he demonstrated an ability to think abstractly; he easily answered simple logic-based problems; he performed poorly on the serial 7s task, as he made mistakes from being notably anxious; his short-term memory was intact; his thinking pattern was somewhat scattered; he had difficulty maintaining a logical and coherent train of thought; his affect was appropriate, aside from being overtly anxious; he exhibited no unusual or bizarre behaviors or mannerisms; his attention span was fair to poor; his speech was normal; and he made good eye contact. (R. at 1620, 1622-23) Baker stated he avoided being around people, including family members. (R. at 1621.) After reviewing Baker's medical records, Stair stated the diagnoses of major depressive disorder and generalized anxiety disorder with panic attacks were consistent with his observations and with Baker's reported symptomatology. (R. at 1624.)

The Personality Assessment Inventory, ("PAI"), test was administered, which indicated Baker was moderately depressed, anxious and agitated. (R. at 1625.) Stair diagnosed major depressive disorder, recurrent, moderate to severe and generalized anxiety disorder, moderate, with mild panic features. (R. at 1626.) Stair opined Baker's ability to understand simple information or directions was mildly impaired; his ability to comprehend and implement multi-step complex instructions was moderately impaired; his ability to maintain persistence and concentration for a full workday and workweek and to adapt to changes in the workplace were markedly impaired; and his ability to interact socially was moderately to markedly impaired. (R. at 1625-26.)

On June 1, 2020, Stair completed a mental assessment, indicating Baker had slight limitations in his ability to follow work rules and to understand, remember and carry out simple job instructions. (R. at 1627-29.) He found Baker had a satisfactory ability to use judgment in public; to interact with supervisors; to function independently; to understand, remember and carry out detailed and complex job instructions; and to maintain personal appearance. (R. at 1627-28.) Stair found Baker had serious limitations, resulting in unsatisfactory work performance, in his ability to relate to co-workers; to deal with work stresses; to maintain attention and concentration; and to behave in an emotionally stable manner. (R. at 1627-28.) Stair found Baker had no useful ability to deal the public; to relate predictably in social situations; and to demonstrate reliability, and he would be absent from work more than two days a month. (R. at 1627-29.)

On March 22, 2021, Baker saw McNew-Hall, for completion of forms for his disability claim. (R. at 1710-13.) Baker was in no acute distress; his spine range of motion was normal; his paraspinal muscle strength and tone were normal; he had

stability and normal range of motion in his bilateral lower extremities; his judgment and insight were intact; his thought process was normal; his thought content was logical; and his mood was normal with an appropriate affect. (R. at 1712-13.) McNew-Hall opined Baker was unable to work due to his chronic back pain, depression and anxiety. (R. at 1713.) She reported Baker needed to move and change positions frequently. (R. at 1713.)

On March 23, 2021, McNew-Hall completed a mental assessment, finding Baker had no limitations in his ability to follow work rules; to use judgment in public; to interact with supervisors; and to understand, remember and carry out simple job instructions. (R. at 1714-16.) She found Baker had slight limitations in his ability to relate to co-workers; to understand, remember and carry out detailed and complex job instructions; and to maintain personal appearance. (R. at 1714-15.) McNew-Hall found Baker had a satisfactory ability to function independently; to maintain attention and concentration; to behave in an emotionally stable manner; to relate predictably in social situations; and to demonstrate reliability. (R. at 1714-15.) She found Baker had serious limitations, resulting in unsatisfactory work performance, in his ability to deal with the public; and to deal with work stresses. (R. at 1714-15.) She found Baker would be absent from work more than two days a month. (R. at 1716.)

That same day, McNew-Hall completed a medical assessment, finding Baker could occasionally lift and carry items weighing five pounds and frequently lift and carry items weighing up to two pounds; he could stand and/or walk up to 30 minutes in an eight-hour workday and could do so for up to 20 minutes without interruption; he could sit up to three hours in an eight-hour workday and could do so for 30 minutes without interruption; he could never climb, kneel or balance; he could

occasionally stoop, crouch and crawl; he was limited in his ability to reach and to push and pull; and he was restricted from working around heights. (R. at 1728-30.) She found Baker would be absent from work more than two days a month. (R. at 1730.)

### III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2021). *See also Heckler v. Campbell,* 461 U.S. 458, 460-62 (1983); *Hall v. Harris,* 658 F. 2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his past relevant work; and 5) if not, whether he can perform other work. *See* 20 C.F.R. § 416.920. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 416.920(a)(4) (2021).

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C. § 1382c(a)(3)(A)-(B); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano,* 617 F.2d 1050, 1053 (4th Cir. 1980).

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers,* 131 F.3d 438, 439-40 (4th Cir. 1997).

Baker argues the ALJ improperly determined his residual functional capacity finding by rejecting the assessments of McNew-Hall and Stair. (Plaintiff's Memorandum In Support Of His Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) Baker contends the ALJ failed to acknowledge the consistencies between their assessments. (Plaintiff's Brief at 6-7.)

Baker filed his application in August 2018; thus, 20 C.F.R. § 416.920c governs how the ALJ considered the medical opinions here.[10] When making a residual functional capacity assessment, the ALJ must assess every medical opinion received in evidence. The regulations provide that the ALJ "will not defer or give any specific evidentiary weight, including controlling weight" to any medical opinions or prior administrative medical findings, including those from the claimant's medical sources. 20 C.F.R. § 416.920c(a) (2021). Instead, an ALJ must consider and articulate how *persuasive* he finds all the medical opinions and all prior

---

[10] 20 C.F.R. § 416.920c applies to claims filed on or after March 27, 2017. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15132-01, 2017 WL 1105368 (Mar. 27, 2017)).

administrative medical findings in a claimant's case. *See* 20 C.F.R. § 416.920c(b), (c)(1)-(5) (2021) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 416.920c(b)(1) (2021).

The most important factors in evaluating the persuasiveness of these medical opinions and prior administrative medical findings are supportability and consistency, and the ALJ will explain how he considered these two factors in his decision. *See* 20 C.F.R. § 416.920c(b)(2). "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 416.920c(c)(1) (2021). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; *see also* 20 C.F.R. § 416.920c(c)(2) (2021). The ALJ is not required to explain the consideration of the other three factors, including relationship with the claimant, specialization and other factors such as an understanding of the disability program's policies and evidentiary requirements.[11] *See* 20 C.F.R. § 416.920c(b)(2).

---

[11] An exception to this is that when the ALJ finds that two or more "medical opinions or prior administrative medical findings about the same issue are both equally well-supported [] and consistent with the record [] but are not exactly the same," the ALJ will explain how he considered the other most persuasive factors including: the medical source's relationship with the claimant, specialization and other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 416.920c(b)(3) (2021).

Baker argues the ALJ improperly determined his residual functional capacity finding by rejecting the assessments of McNew-Hall and Stair. (Plaintiff's Brief at 5-7.) A claimant's residual functional capacity refers to the most the claimant can still do despite his limitations. *See* 20 C.F.R. § 416.945(a) (2021). The ALJ found Baker had the residual functional capacity to perform sedentary work, except he could not operate foot controls, crawl or climb ladders, ropes or scaffolds; he could occasionally stoop, crouch and kneel; he could frequently, but not constantly, handle and finger, bilaterally; he could adequately understand, remember and apply information, as well as concentrate, persist and maintain pace for simple, routine, noncomplex tasks; he could follow work instructions at that level in a work setting involving routine work situations and work changes;[12] he required an ordinary level of supervision, but could have no more than occasional interaction with supervisors and co-workers; he could have no public interaction; and he could not perform fast-paced production or pace rate work demands, such as assembly line work. (R. at 20-21.)

In making this residual functional capacity finding, the ALJ stated he found the opinions of McNew-Hall and Stair unpersuasive as they were not consistent with or supported by the record. (R. at 29.) The ALJ noted McNew-Hall's notes generally showed no deficits on examination. (R. at 29.) The ALJ found that, while Stair noted deficits in mood and concentration, Baker related well and reported only moderate symptomology based on self-assessments. (R. at 29.) McNew-Hall reported that

---

[12] Unskilled work generally is low stress and involves remembering only very short and simple instructions in a routine environment in which "concentration is not critical." POMS, DI 25020.010(B)(3), available at http://policy.ssa.gov/poms.nsf/lnx/0425020010 (effective Apr. 5, 2007) (explaining that unskilled work involves "remember[ing] very short and simple instructions," and that "concentration is not critical").

Baker's judgment and insight were intact; his thought process was normal; his thought content was logical; and his mood was normal with an appropriate affect. Stair reported that Baker's hygiene and grooming were good; he was fully oriented; his short-term memory was intact; his thinking pattern was somewhat scattered; he had difficulty maintaining logical and coherent train of thought; he had an appropriate affect; his attention span was fair to poor; his speech was normal; and he made good eye contact.

In addition, Baker's other health care providers routinely reported that he was fully oriented; he had an appropriate affect; his speech was clear; he made good eye contact; his hygiene and grooming were excellent; his judgment and insight were fair; his mood ranged from euthymic to mildly dysthymic to depressed with an appropriate, mildly anxious and slightly blunted affect; his thought process was coherent; his thought content was logical; and his recent memory was normal. At his individual therapy sessions, Baker reported his medications were working well and controlled his symptoms. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." *Gross v. Heckler,* 785 F.2d 1163, 1166 (4th Cir. 1986). Based on this, I find that the ALJ properly evaluated the medical evidence as to Baker's mental residual functional capacity.

The ALJ stated he found the medical assessments of the state agency physicians unpersuasive because the medical evidence supported greater limitations than opined by the state agency consultants. (R. at 29.) The ALJ also found McNew-Hall's medical assessments unpersuasive as they were not supported by or consistent with the record. (R. at 29.) The ALJ noted that McNew-Hall's opinions were based partially on Baker's self-reports and the medical evidence did not corroborate his allegations. (R. at 29.) A claimant's allegations "need not be accepted to the extent

they are inconsistent with the available evidence, including objective evidence of the underlying impairment." *Craig v. Chater*, 76 F.3d 585, 595 (4th Cir. 1996); *see also* Social Security Ruling, ("S.S.R."), 16-3p, at *4, WEST'S SOCIAL SECURITY REPORTING SERVICE, 2017 WL 5180304 (Oct. 25, 2017).  In March and April 2019, McNew-Hall reported Baker's physical examinations were normal. From June through November 2019, except for finding Baker had no pedal sensation in June 2019 and limited range of motion in his back in August 2019, Dr. Eastridge found Baker had normal physical examination findings. In March 2021, McNew-Hall found Baker was in no acute distress; his spine range of motion was normal; his paraspinal muscle strength and tone were normal; and he had stability and normal range of motion in his bilateral lower extremities.

The ALJ noted that the medical evidence showed Baker experienced loss or painful range of motion of the lumbar spine at times; he had motor weakness in his bilateral lower extremities; he had spasms in his lumbar spine; and he exhibited tenderness and positive testing in the hips, bilaterally. (R. at 29-30.)  The ALJ further noted that Baker did not exhibit difficulty initiating movement, difficulty moving generally or muscle tremors or atrophy. (R. at 30.)  In addition, the record routinely shows that Baker had a normal gait; he was able to walk on his heels and toes; he had normal reflexes, motor functioning and sensation; he had full weight-bearing on the left lower extremity; and his left ankle had no swelling and full range of motion. In November 2019, x-rays of Baker's lumbar spine showed mild degenerative disease changes at the L2-L3 level, slight disc space narrowing at the L5-S1 level and no discrete evidence of instability, and an MRI of his lumbar spine reflected mostly mild issues, but did note a potential slight abutment of his S1 nerve root without discrete displacement or compression at the L5-S1 level.

Furthermore, the record shows Baker reported improvement, in that his medication regimen kept his pain controlled, improved his quality of life and enabled him to increase his daily activities. *See Gross,* 785 F.2d at 1166. In terms of activities of daily living, Baker stated he walked for exercise, he helped his grandmother with chores, and he took his grandmother to her doctor's visits. Dr. Eastridge suggested Baker seek job training at the RCAM and encouraged him to find a hobby, to volunteer or to work. In addition, Dr. Eastridge ordered aerobic workouts to strengthen Baker's back and recommended he gradually work up to "good sweaty workouts." Thus, based on Baker's reported pain relief and physical examination findings, the ALJ found he could perform a limited range of sedentary work. (R. at 20-21.)

Based on the above, I find that substantial evidence exists to support the ALJ's consideration of the medical evidence and his residual functional capacity finding. An appropriate Order and Judgment will be entered.

DATED:     February 2, 2023.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE